Judge Ewing-
delivered the Opinion of the Court.
This was an action of covenant brought by Dougherty against Dills and Howard, upon an article of agreement, dated the 21st of February, 1835, in which the two latter had covenanted to deliver to the former, at Greenville, South Carolina, from nine hundred and fifty to ten hundred and fifty good merchantable drove hogs, to be started from Harrison county, Kentucky, between the 23d and 27th days of October following. And Dougherty covenanted to receive them, and pay for them four cents per pound, gross, in thirty days after the delivery. It was further agreed that Dills, or Howard, or their manager, was to go with Dougherty, and in his service, at one dollar per day and expenses paid, until the money was due or paid. “It was further agreed, when the said hogs arrive - at the place of delivery, that should Dills and Howard choose to take two hundred dollars profit on said lot of Hogs, said Dougherty is to pay them that sum, pi’ovided that said hogs are in good condition, as above described.” Endorsed on which article, is the following writing, singed by Dougherty: — “It is understood that should the within named Dills and Howard require it, that Dougherty is to give them such a man, as his security for his performance, as John Miller or John S. Morgan of Nicholas, shall say they consider good.”
The defendants below pleaded that they did, in reasonable time, and before the time for starting the hogs, require the security, and the plaintiff had failed and refused to give it.
The plaintiff, Dougherty, replied that, when Dills demanded the security, he agreed to waive the approval by Miller or Morgan, and be the judge of the security himself, and he then offered security which he said was good, and Dills declined to receive it.
An indorsement on a contract by which a party to it stipulates that he will, if required, give security for its performance on his part, must be taken as part of the contract — constituting, as soon as security is required, a condition precedent— to be performed within a reasonable time.
The right to insist on the security, as a condition precedent, was not waived by its being declined for a time, when required, proposed and approved. The covenantee had a right to take time to consult his partner in the transaction, consider and settle the form &c.
It was incumbent upon the party wlro was to give the security, when an unexceptionable instrument was prepared for him, to get it executed, or prepare a more fit one for the occasion.— The names of sureties affixed to the original covenant would avail nothing, without an alteration ofils terms, which might be objected to; an offer to have it so signed, was no offer to comply with the indorsement.
*254 A demurrer having been put in, to this replication, which was overruled by the court, and issue taken thereon, and verdict and judgment for the plaintiff below, and a motion for a new trial overruled, the case has been brought to this Court.
We cannot notice the defects in the replication, after the withdrawal of the demurrer and issue to the country.
But an examination of the proof and instructions, has convinced us, that there are many glaring errors to the manifest prejudice of the plaintiffs in error; some of which we will notice.
The endorsed agreement is evidently a part of the article, and is to be taken and construed with it, as such. And by every fair and reasonable interpretation, it must be regarded as a precedent condition, to the covenants on the part of the defendants below. They were not content to undertake to deliver so large a quantity of hogs upon the individual responsibility of Dougherty. Hence the exaction of security, and the undertaking on his part, to give it, when required.
The performance of this covenant, on his part, was precedent, in order of time, to the performance of the covenants on their part, and seems to have been so understood by the parties. It was to be performed when required, and in all reasonable likelihood, it must have been understood, that it would be required, if at all, before they were to enter on the hazardous and responsible undertaking on their part, and it was in fact required before. It was for their security and indemnity, and, of course, was expected to be exacted before they involved themselves in the purchase.
As a precedent condition, it was his duty to have performed it, within reasonable time, after required,' unless prevented by the covenantors. He did not perform it;' and we see nothing in the proof from which the conclusion can be arrived at, that he was prevented from performing it, by the act of the covenators. If the offer of Rankins and Colier, as security, when Dills casually met Dougherty at Carlisle, could amount to a legal tender of security, Dills’ declining it for the time, could by no means excuse Dougherty from giving it when after- *255 wards demanded. Dills had a right to take time to consult with his partner, or with counsel, as to' the form of the instrument, by which the surety should be bound.— And when Dills was at the trouble of procuring an instrument to be drawn up, for the signature of the surety, containing no other than those stipulations which were right and proper, it was Dougherty’s duty to have procured it, to be signed by those who had been approved of and agreed to be accepted, or to prepare one himself, and procure it to be signed and tendered.— And his proffer to procure them to sign the original article, could by no means excuse him. If their signature to it could have been availing, it was certainly not the only way in which he could have performed this covenant; and he cannot be said to have been prevented from performing it, by the act of the covenantee, when it was perfectly competent for him to have performed it in another and more appropriate manner.
In covenant, the recovery is only to the amount of injury or loss sustained by the plaintiff, in consequence of the breach; and the loss -or injury resulting from a failure to deliver chattels (not paid for,! aecording to contract, is the difference between what they would have cost the purchaser, all charges included, up to the time'iixed for the delivery, and the market price at which he might then have sold them. And, if the seller had an election of different modes'of settling the sale price, the presumption is, that he would have elected most favorably for himself; and the difference between that price with with the charges added, and the market price, is the measure of damages
*255 But their signature, to the original instrument, would have availed nothing without an alteration of, or addition to it. Their names were not in the body of the instrument, nor could its stipulations have been made to apply to them. They were the stipulations of Dougherty alone, and alone applicable to him. Dills might, therefore, well doubt the propriety of receiving their signatures to that instrument, as a compliance with the terms of the covenant, when such signature alone would have imposed no obligation upon them without some addition to or alteration of the instrument, which they might feel unwilling to have made. The security was intended as an indemnity to them, and the obligation rested on Dougherty to give it, and he could, if he was solicitous to perform his covenant, have easily caused an instrument to be prepared, executed and tendered, which would have discharged his covenant without any interference with the original article.
But there seems to us to be another radical defect in the instructions and finding of the jury.
The plaintiff in an action of covenant has a right to recover a sum in damages only equivalent to the injury or loss he has sustained by its breach. That sum, in a *256 covenant like this, is the difference between the amount he would have had to pay out, in case the hogs had been delivered, and the amount of sales, after deducting all reasonable costs upon them after the delivery; or the actual profit of the speculation. Now, two alternatives were reserved in the contract, to Dills and Howard— one to receive four cents gross per hundred, the other to receive two hundred dollars profit on thé purchase. It could not be doubted that they would have elected the most favorable alternative. If, therefore, they had elected to receive the two hundred dollars profit, which they had unquestionably a right to do, Dougherty’s damage or loss, and consequent right of recovery,, would have been only the net profit, which he could have made upon the hogs, by selling them at the customary price they bore at the place of delivery and near that, about the time they would have arrived, after deducting the costs of their purchase (allowing a reasonable time for making it, next preceding the days fixed for their starting,) and all losses and costs and expenses of transportation and sale, together with the two hundred dollars profit. The position is not tenable, that because the hogs were not delivered, Dills and Howard had no right to make the election, and that therefore this mode should not be adopted to arrive at a just estimate of Dougherty’s losé and right of recovery;- or that the two hundred dollars and costs, &c. shall not be deducted from the sales to show the profit which he has been deprived of. It may as well be contended that the four cents per hundred, shall not be deducted in arriving at the estimate, because the hogs have not been delivered.
It is not Dills and Howard that is suing. If they were, they could neither elect to take, or recover, the two hundred dollars and costs, &c., nor the four cents per pound; as they did not deliver the hogs. But Dougherty is suing, and the question is — what has he been deprived of or lost, by the breach of the covenant? Certainly no more than he would have made in profit, on that alternative of the covenant, which Dills and Howard had a right, and would most unquestionably, if most favorable to them, have elected, in case the hogs had been delivered.
*257 The instructions of the Circuit Court, as well as verdiet of the jury, having departed from these principles, it is considered that the judgment be reversed, and cause remanded that a new trial may be granted. And the plain tiffs in error are entitled to their costs in this Court. ■